In re **SMITHKLINE BEECHAM CLINICAL LABORATORIES, INC. LABORATORY TEST BILLING PRACTICES LITIGATION.**

**Blue Cross Of California, et al., Plaintiffs,**

v.

**Smithkline Beecham Clinical Laboratories, Inc., Defendant.**

**Nos. MDL 1210, CV3:97CV17795 AVC.**

United States District Court, D. Connecticut.

July 2, 1999.

### RULING ON THE DEFENDANT'S MOTIONS TO DISMISS THE SECOND AMENDED COMPLAINT AND THE AMENDED CLASS ACTION COMPLAINT

COVELLO, Chief Judge.

This is an action for legal and equitable relief in which the plaintiffs, thirty-seven health care insurers and payers for health care services, four health care plans, and six individuals, claim that the defendant, SmithKline Beecham Clinical Laboratories, Inc. ("SBCL"), engaged in, *inter alia*, fraudulent billing practices.[1] Specifically, the second amended complaint and the amended class action complaint assert causes of action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"), and under common law tenets sounding in fraud, unjust enrichment and restitution.[2]

Pursuant to Federal Rule of Civil Procedure 12(b)(6), SBCL now moves to dismiss both the second amended complaint and some, but not all, of the counts in the

---

1. On February 4, 1998, this court consented to the transfer of all related actions to this court for coordinated and consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. Currently before the court are the defendants' two motions to dismiss.

2. Further, certain of the "class plaintiffs," defined *infra*, assert causes of action under Pennsylvania statutory law.

consolidated amended class action complaint.

The issues presented are: 1) whether the second amended complaint and the amended class action complaint allege facts sufficient to establish a RICO cause of action; [3] and, if so, 2) whether the class plaintiffs' allegations of fraud underlying their RICO claim are alleged with sufficient particularity as required by Federal Rule of Civil Procedure 9(b); 3) whether the plaintiff insurers have alleged facts sufficient to establish that they are "fiduciaries" within the meaning of ERISA, so as to have standing to assert their ERISA claims against SBCL; and, if not, 4) whether the court should recognize a federal common law cause of action for equitable relief in favor of the plaintiff insurers who are not "fiduciaries" within the meaning of ERISA; 5) whether the plaintiff insurers' state common law causes of action for fraud, unjust enrichment and restitution are preempted by ERISA; 6) whether the court should create a common law cause of action for unjust enrichment or restitution on behalf of the class plaintiffs who already have standing to assert an ERISA claim against SBCL; and 7) whether the state law causes of action for conversion, unjust enrichment, and for violations of the Pennsylvania Unfair Trade Practices Act asserted by the four employee benefit plans identified in the consolidated amended class action complaint are preempted by ERISA.[4]

For the reasons hereinafter set forth, the court concludes that: 1) the complaints fail to state a cognizable RICO cause of action; 2) only six of the thirty-seven plaintiff insurers have alleged facts sufficient to establish, at this stage of the litigation, that they are "fiduciaries" within the meaning of ERISA with standing to sue SBCL; 3) in light of the court's conclusion that the class plaintiffs' RICO cause of action should be dismissed, it need not address whether the class plaintiffs' allegations of fraud fulfill the requirements of Federal Rule of Civil Procedure 9(b); 4) it should not create a federal common law cause of action for equitable relief on behalf of those insurers who are not "fiduciaries" within the meaning of ERISA; 5) the plaintiff insurers' state common law causes of action for fraud, unjust enrichment and restitution are preempted by ERISA, to the extent they seek relief for payments made to SBCL on behalf of ERISA-qualifying benefit plans; 6) the court should not create a federal common law cause of action for unjust enrichment or restitution on behalf of parties who already have a cause of action against SBCL under ERISA; and 7) the state law causes of action for conversion, unjust enrichment and for violations of the Pennsylvania Unfair Trade Practices Act,

**3.** As discussed *infra,* the question of whether the plaintiffs have stated a RICO cause of action depends on: 1) whether they have alleged a viable "enterprise" within the meaning of RICO; 2) whether they can establish that SBCL, the RICO defendant, is distinct from the enterprise itself; and 3) whether, for the "single entity" enterprises, the plaintiffs have alleged sufficient facts that could establish that SBCL "conducted or participated in · the conduct of the enterprise." *See infra* section I.

**4.** SBCL does not argue that *all* of the class plaintiffs' claims should be dismissed. Specifically, SBCL does not seek to dismiss count II of the consolidated amended class action complaint, which asserts an ERISA claim by Arthur Davis and Miller Building Systems, Inc, nor does it seek to dismiss counts IV

through VI, asserting claims for fraud, unjust enrichment and for violations of the Pennsylvania Unfair Trade Practices Act, *to the extent those claims are asserted by* Janet Cotter, Barbara Donenberg, Mary Gallardo, David Watkins, and Judith White, and not by the four employee benefit plans. *See infra* section III.

With respect to the second amended complaint, SBCL seeks to dismiss count VI, which asserts a claim under the Pennsylvania Insurance Fraud Statute, 18 Pa. Cons.Stat. Ann. § 4117, *only if* the court dismisses all of the plaintiff insurers' federal claims. *See infra.* Because of the court's conclusion, *infra,* that some of the plaintiff insurers' have a federal cause of action under ERISA against SBCL, the court concludes that count VI of the second amended complaint remains.

asserted by the four employee benefit plans, are preempted by ERISA.

Accordingly, the defendant's motion to dismiss the second amended complaint is GRANTED in part and DENIED in part, and its motion to dismiss counts I and III of the consolidated amended class action complaint and counts IV, V, and VI, of the consolidated class action complaint to the extent those claims are asserted by the four employee benefit plans, is GRANTED.

## FACTS

On August 19, 1997, thirty-seven insurance companies initiated this lawsuit.

On June 11, 1998, the court dismissed the plaintiff insurers' amended complaint and the individual plaintiffs (now the "class

plaintiffs") complaint, but gave them leave to re-file their claims against SBCL.

On September 18, 1998, the plaintiff insurers filed their second amended complaint against SBCL.

On September 29, 1998, the "class plaintiffs" [5] filed their consolidated amended class action complaint.

The second amended complaint and the amended class action complaint disclose that the plaintiff insurers are thirty-seven health insurers [6] and payers for health care services, and the "class plaintiffs" [7] are four employer benefit plans, one corporation [8] and six individuals. SBCL is a subsidiary of SmithKline Beecham plc, a British corporation and incorporated in the state of Delaware. SBCL owns and oper-

---

5. Although the court has not yet ruled on the class plaintiffs motion to certify the class, for the purposes of this ruling, the court will refer to them as the "class plaintiffs."

6. The *Blue Cross* plaintiffs are as follows: Blue Cross of California, California Physicians' Services (d/b/a Blue Shield of California), Aetna Life Insurance Company, Anthem Health Plans, Inc. (d/b/a/ Anthem Blue Cross and Blue Shield of Connecticut), Blue Cross and Blue Shield of Florida, Inc., Blue Cross & Blue Shield of Georgia, Inc., Golden Rule Insurance Company, John Deere Health Care, Inc., Pioneer Financial Services, Trustmark, Principal Life Insurance Company, Humana, Inc., Louisiana Health Services & Indemnity Company, Inc. (d/b/a/ Blue Cross and Blue Shield of Louisiana, Associated Hospital Service of Maine (d/b/a Blue Cross Blue Shield of Maine), Blue Cross/Blue Shield of Michigan, Allianz Life Insurance Company of North America, Blue Cross Blue Shield of Minnesota, Federated Mutual Insurance Company and Federated Service Insurance Company, Reliastar Life Insurance Company, Mutual of Omaha Insurance Company, Blue Cross and Blue Shield of New Jersey, Inc., The Prudential Insurance Company of America, Finger Lakes Health Insurance Company, Inc. and Finger Lakes Medical Insurance Company, Inc. (d/b/a Finger Lakes Blue Cross and Blue Shield), The Guardian Life Insurance Company of America, New York Care Plus Insurance Company, Inc. (d/b/a Blue Cross and Blue Shield of Western New York and Blue Shield of Northeastern New York), New York Life Insurance Company, Blue Cross Blue Shield

of North Carolina, Jefferson–Pilot Life Insurance Company, Blue Cross & Blue Shield of Rhode Island, Blue Cross and Blue Shield of Tennessee, Blue Cross and Blue Shield of Texas, Inc., Trigon Insurance Company (d/b/a Trigon Blue Cross Blue Shield), Group Hospitalization & Medical Services, Inc. (d/b/a Blue Cross Blue Shield of the National Capital Area), Blue Cross and Blue Shield United of Wisconsin and United Wisconsin Services, Inc., Employers Health Insurance Company, Time Insurance Company, and Wisconsin Physicians Service Insurance Corporation.

7. The amended class action complaint groups the class plaintiffs into three categories: 1) the "RICO plaintiffs" consisting of all eleven plaintiffs named in the amended class action complaint; 2) the "ERISA Plaintiffs" consisting of plaintiffs Arthur Davis and Miller Building Systems, Inc. ("MBS"); and 3) the "State Law Plaintiffs" consisting of the four ERISA-qualified employee benefit plans (Carpenter's Health Fund of West Virginia, Employer–Teamsters Joint Counsel # 84 Health and Welfare Fund, Northern California General Teamsters Security Fund, and S.E.I.U. Local 74 Welfare Fund), and five individuals (Janet Cotter, Barbara Donnenberg, Mary Gallardo, David Watkins, and Judith White) *See* Amended Class Action Cplt., at ¶¶ 5–7.

8. Specifically, MBS claims that it is a "sponsor and fiduciary of an ERISA plan, that is administered by a third party administrator ('TPA')." *See* Amended Class Action Cplt., at ¶ 4g.

ates one of the nation's largest chains of clinical laboratories.

The gravamen of the second amended complaint and the RICO Case Statement [9] is that from 1989 until 1995, SBCL engaged in fraudulent billing practices that resulted in millions of dollars in losses to the plaintiff insurers. Specifically, the plaintiff insurers allege that SBCL exploited the health care payment system in five fundamental ways: 1) SBCL billed the plaintiff insurers for tests that physicians did not order or intend to order and billed for tests that it had led physicians to believe would not result in separate charges ("add-ons"); 2) SBCL offered physicians discounts for certain test packages, but billed the plaintiff insurers for the full price for supposedly discounted test packages ("selective discounts"); 3) SBCL billed the plaintiff insurers separately for expensive constituents of test panels that should have been billed at a single composite rate ("unbundling"), 4) SBCL performed and billed for more expensive tests than were ordered ("upcoding"), and in some cases performed; and 5) SBCL inserted fabricated diagnosis codes to obtain reimbursement from third party payers ("code jamming").

The plaintiff insurers allege that, through this scheme, SBCL effectively substituted its own financially self-interested judgment for the informed, clinical judgment of physicians. The plaintiff insurers further allege that SBCL forced its scheme upon unsuspecting physicians by offering institutional incentives and kickbacks. The incentives included test discounts, hiring physician family members, computer equipment, refrigerators, free phlebotomists' services, office draw sites and other free services, such as writing off STAT (urgent) services which were then billed to third-party payers.

The amended class action complaint alleges that between 1989 and 1995, SBCL engaged in fraudulent billing practices, causing the class plaintiffs to pay inflated charges for clinical laboratory tests. The class plaintiffs claim that "SBCL used its control over the management of the Laboratory Network to engage in a fraudulent scheme with respect to clinical laboratory tests on human tissue, blood or urine specimens, which resulted in the intentional and systematic;" 1) billing for medical tests that physicians did not order or intend to order; 2) billing for medical tests that SBCL had intentionally led doctors to believe would not result in additional charges ("add-ons"), 3) billing at full price, for tests that SBCL had represented would be discounted ("selective discounts"); 4) manipulation of the test requisition order forms provided to physicians by SBCL, 5) billing separately for individual test panels, thereby dramatically increasing the cost ("unbundling"); and 6) altering of physician orders for standard tests so that the more expensive medical tests were conducted and paid for by the class plaintiffs ("upcoding").

On November 17, 1998, SBCL filed the within motions to dismiss the second amended complaint and to dismiss counts I and III of the consolidated amended class action complaint, as well as counts IV, V, and VI of the consolidated class action complaint, to the extent those claims are asserted by the four employee benefit plans defined therein.

### STANDARD

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) involves a determination as to whether the plaintiff has stated a claim upon which relief can be granted. *Fischman v. Blue Cross Blue Shield,* 755 F.Supp. 528, 530 (D.Conn.1990) The motion must be decided solely on the facts alleged. *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985). In deciding a motion to dismiss, a court must assume all

---

9. The court will treat the RICO Case Statement, filed pursuant to the Local Rules, as if it supplements the second amended complaint and the amended class action complaint. *See McLaughlin v. Anderson,* 962 F.2d 187, 189 (2d Cir.1992).

factual allegations in the complaint to be true and must draw reasonable references in favor of the non-moving party. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in [the] plaintiffs' amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing the suit." *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993) (citations omitted). Such motion must be granted only where no set of facts consistent with the allegations could be proven which would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## DISCUSSION

### I. RICO

SBCL first argues that the plaintiff insurers' RICO cause of action and the class plaintiffs' RICO cause of action are legally deficient and that the court should therefore dismiss them with prejudice.[10]

Both the plaintiff insurers and the class plaintiffs respond that they have alleged viable RICO causes of action. The court disagrees.

■ To state a RICO cause of action under 18 U.S.C. § 1962(c), a plaintiff must establish that: (1) the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce. *See e.g. Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). The term "enterprise" is defined in 18 U.S.C. § 1961(4) as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *See* 18 U.S.C. § 1961(4); *see also U.S. v. Turkette*, 452 U.S. 576, 581–82, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). Section 1961(4) includes two categories of enterprises: association-in-fact enterprises and legal entities. The second amended complaint and the amended class action complaint allege the existence of both categories of enterprises.[11]

■ "Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device." *New York Automobile Insurance Plan v. All Purpose Agency & Brokerage, Inc.*, No. 97 Civ. 3164(KTD), 1998 WL 695869,*4 (S.D.N.Y. Oct. 6, 1998) (quoting *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y.1996)).[12] "[A] court's focus must be 'to ensure that RICO's severe penalties are limited to 'enterprises consisting of more than simple conspiracies to perpetrate the acts of racketeering.' " *Schmidt v. Fleet Bank*, 16 F Supp 2d 340, 346

---

**10.** The court previously dismissed, without prejudice, the RICO cause of action raised in the plaintiffs' amended complaint. *See* Ruling on the Defendant's Motion to Dismiss, June 11, 1998.

**11.** SBCL attacks the plaintiffs' use of alternative enterprise theories, in the first instance, arguing that RICO is not "an invitation to offer up 'alternative' enterprise theories in the hope that one might support a valid RICO claim." *See* SBCL Mem., p. 5 (citation omitted).

**12.** Further, "in considering RICO claims, courts must attempt to achieve results 'consistent with Congress's goal of protecting legitimate businesses from infiltration by organized crime.' " *Schmidt v. Fleet Bank*, 16 F.Supp.2d 340, 345 (S.D.N.Y.1998) (quoting *United States v. Porcelli*, 865 F.2d 1352, 1362 (2d Cir.1989)); *New York Automobile Insurance Plan v. All Purpose Agency & Brokerage, Inc.*, No. 97 Civ. 3164(KTD), 1998 WL 695869,*4 (S.D.N.Y. Oct. 6, 1998) (dismissing RICO claim where enterprise lacked common purpose to defraud).

(S.D.N.Y.1998) (citations omitted). "[C]ourts must always be on the lookout for the putative RICO case that is really 'nothing more than an ordinary fraud case clothed in the Emperor's trendy garb.'" *Id.*, 16 F.Supp.2d at 346 (citations omitted) (citing *In re Integrated Resources Real Estate*, 850 F.Supp. 1105, 1148 (S.D.N.Y. 1993)).

## A. Association–in–Fact Enterprises [13]

### 1. "Laboratory Network" Enterprise

SBCL first argues that the alleged "laboratory network" enterprise,[14] defined in both the second amended complaint and the consolidated amended class action complaint, is not a viable enterprise within the meaning of RICO because it lacks "a common fraudulent purpose,[15] or even a sufficiently defined common purpose." Specifically, SBCL contends that, like the RICO cause of action previously dismissed by this court,[16] the "laboratory network" enterprise alleged in the complaints falls to allege facts sufficient to establish that the members shared a "common purpose" or that the members of the laboratory network functioned as a "continuing unit."

13. As stated by the United States Supreme Court in *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), an "association-in-fact" enterprise is one category of enterprises contemplated by the statutory definition of an "enterprise," 18 U.S.C. § 1961(4). The first category, discussed *infra* section B, is referred to as a "single entity" enterprise.

14. The second amended complaint defines the "laboratory network enterprise" as including: 1) approximately 23 to 26 SBCL-owned laboratories; 2) approximately 50 to 60 independent laboratories; and 3) "numerous patient service centers ['intake facilities'], some of which were owned by SBCL and some of which were independently owned...." *See* 2d Amended Cplt., at ¶ 6bi.

The consolidated amended class action complaint defines the "laboratory network" enterprise as consisting: 1) laboratories owned by SBCL, in addition to other smaller testing facilities; 2) independent testing laboratories, which were affiliated with SBCL through a variety of contractual obligations; 3) numerous patient service centers, some of which were owned by SBCL and some of which are independently owned, but were connected to and affiliated with the group through various arrangements. *See* Amended Class Action Cplt., at ¶ 13b.

15. As support, SBCL relies upon *Moll v. U.S. Life Title Ins. Co.*, 654 F.Supp. 1012 (S.D.N.Y. 1987), *First Nationwide Bank v. Gelt Funding, Corp.*, 820 F.Supp. 89, 98 (S.D.N.Y.1993), *aff'd*, 27 F.3d 763 (2d Cir.1994), and *Cullen v. Paine Webber Group, Inc.*, 689 F.Supp. 269, 273 (S.D.N.Y.1988). In *Moll*, the defendant argued that plaintiffs had "fail[ed] to state how these various individuals and entities functioned as a continuing unit or that they shared a common purpose to engage in a particular fraudulent course of conduct."

*Moll v. U.S. Life Title Ins. Co.*, 654 F.Supp. 1012, 1032 (S.D.N.Y.1987). The court in *Moll* agreed, and subsequent cases, *e.g. First Nationwide* 820 F.Supp. at 98; *Cullen*, 689 F.Supp. at 273 cited to the statement in *Moll* regarding a "common purpose to engage in a particular fraudulent course of conduct."

This court, however, does not read these cases to have altered the Supreme Court's holding *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) that an association-in-fact enterprise is proven by establishing a common purpose among the members and that the members functioned as a continuing unit. To the contrary, *Turkette*, 452 U.S. at 583, 101 S.Ct. 2524, states that an association-in-fact enterprise need not exhibit an illegitimate common purpose.

16. The amended complaint dismissed by the court on June 11, 1998 alleged that the "billing network" enterprise, consisting of SBCL, hundreds of laboratories, physician offices and hospitals, was associated for the purposes of *defrauding* the plaintiffs. Because of the nature of the plaintiffs' allegations, the court relied, in part, upon *Moll v. U.S. Life Title Ins. Co.*, 654 F.Supp. 1012, 1032 (S.D.N.Y.1987), in dismissing the plaintiffs' RICO claim for failure to allege facts that could establish that the members of the "billing network" shared a common purpose to *defraud* the plaintiffs. However, the court also stated in its June 11, 1998 ruling, that the Supreme Court's definition of an "association in fact" enterprise in *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), is clear, *i.e.* "a group of individuals associated together for a common purpose of engaging in *a course of conduct." See* Ruling on the Defendant's Motion to Dismiss, June 11, 1998 at 15 (emphasis added); *see also supra* note 15.

Finally, SBCL argues that the "laboratory network" is not a viable RICO enterprise, because SBCL, the RICO defendant, is not distinct from the enterprise itself.

The plaintiffs respond that SBCL has misconstrued the requirements of a RICO enterprise. The gravamen of the plaintiffs' arguments in opposition to SBCL's motions to dismiss is that an "association-in-fact" enterprise need not exhibit a common *fraudulent* purpose, and that they have alleged a common purpose shared by the members of the laboratory network that is sufficient under RICO. Further, the plaintiffs argue that the complaints allege facts sufficient to establish that the members of the laboratory network functioned as a "continuing unit" and that SBCL was sufficiently distinct from the network as is required by RICO.

The court concludes that the laboratory network is not a viable RICO enterprise.

In *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), the United States Supreme Court held that an association in fact enterprise under 18 U.S.C. § 1961(4) is comprised of a "group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), and that such an enterprise is proven by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates *function as a continuing unit." Id.* (emphasis added).

■ In this case, the plaintiffs allege that the "laboratory network" participants shared a "common purpose" of "joining and continuing as a member" of the network, and of "being a member of one of the largest organizations of its type in the nation operating under the banner of a well-recognized industry name." *See* 2d Amended Cplt., ¶ 92. In addition, the plaintiffs allege that "[t]he members of the Laboratory Network also shared a common purpose in increased purchasing power, reduced organization costs, the benefit of management expertise, and assistance with billing." [17] While the alleged common purpose of the laboratory network members is arguably a list of shared *interests* of shared *benefits* rather than a shared *purpose*, the court concludes that the plaintiffs allegations are sufficient, at this stage of the litigation, to satisfy the "common purpose" requirement articulated in *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

■ However, the court concludes that the second amended complaint and the consolidated amended class action complaint fail to allege facts sufficient to establish that the members of the "laboratory network" functioned as a "continuing unit" as is required under RICO. *See United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). To determine whether members of an association-in-fact enterprise functioned as a continuing unit, courts within this circuit look to the "hierarchy, organization and activities" of that enterprise. *See e.g. United States v. Coonan*, 938 F.2d 1553, 1560–61 (2d Cir.1991).

In *Moll v. U.S. Life Title Ins. Co.*, 654 F.Supp. 1012, 1032 (S.D.N.Y.1987), the court rejected the plaintiffs' assertion that the alleged enterprise shared a common purpose of "providing real estate settlement services to purchasers of real estate and maximizing illegal kickbacks," and concluded that the plaintiffs failed to allege facts to establish how the individuals joined together as a group to achieve those purposes, and how they functioned as a

---

**17.** Specifically, the plaintiffs allege that the members of the "laboratory network associated in fact together and engaged in a common course of conduct," *i.e.* the performance of clinical laboratory tests and billing, and therefore constituted an "enterprise" within the meaning of RICO. Further, the second amended complaint includes a list of benefits from becoming a member of the laboratory network, which, according to the plaintiffs argue, illustrates the enterprise's "common purpose." *See* 2d Amended Cplt., ¶¶ 92a–92b.

"continuing unit." *Id.* (emphasis added) ("Conspicuously absent from the complaints are any factual allegations regarding the continuity of structure"); *see also Schmidt v. Fleet Bank,* 16 F.Supp.2d 340, 349 (S.D.N.Y.1998) (citation omitted) ("Continuity of structure exists where there is an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than an ad hoc basis").

Similarly, in *First Nationwide Bank v. Gelt Funding Corp.,* 820 F.Supp. 89 (S.D.N.Y.1993), the court dismissed the plaintiff's RICO claim which alleged that a mortgage broker and various borrowers joined together as a group to perpetrate frauds for over six years. Dismissing the claim, the court stated that: "[c]onclusory allegations that disparate parties were associated in fact by virtue of their involvement in the real estate industry ... are insufficient to sustain a RICO claim, absent allegations as to *how the members were associated together* in an 'enterprise.'" *Id.* (emphasis added); *accord New York Automobile Insur. Plan v. All Purpose Agency & Brokerage, Inc.,* No. 97 Civ. 3164(KTD), 1998 WL 695869 (S.D.N.Y., Oct.6, 1998) (concluding that the plaintiffs had alleged facts sufficient to establish only that the members of the alleged enterprise committed "discontinuous" "independent" frauds with the aid of the defendant).

Here, the allegations in the second amended complaint and the consolidated amended class action complaint state that "the laboratory network /enterprise oper-

ated and was a continuing unit *whose affairs were controlled and direct?ed from [ ] SBCL's corporate headquarters over a period of years."* See 2d Amended Cplt., at ¶ 93 (emphasis added). The second amended complaint further alleges that:

[e]ach of the individual component parts of the Laboratory Network was essential to the operation of the group. The independent laboratories and centers that, together with the laboratories and centers owned by the defendant, formed the network ... [ ][I]t was the totality of all the constituent parts of the network - an organization larger than and distinct from defendant SBCL—which was in fact the Laboratory Network and which was used by defendants. to commit repeated acts of wire and mail fraud.

See 2d Amended Cplt., ¶ 88b. The plaintiff insurers provide no further factual allegations as to how the members "formed the network," how they worked together and how they operated with "continuity of structure." *See Schmidt v. Fleet Bank,* 16 F.Supp.2d 340, 349 (S.D.N.Y.1998). The second amended complaint alleges only that the members of the laboratory were *controlled by* SBCL.[18]

Similarly, the consolidated amended class action complaint allege that "SBCL *manipulated* the *internal operations* of the Laboratory Network," *see* Amended Class Action Cplt, at ¶ 16b (emphasis added), yet provides no further factual allegations as to what those *"internal operations"* were.

**18.** The further allegations in the second amended complaint as to the structure of the laboratory network are as follows:

The organization /enterprise had a distinct structure, organization and management: a) the structure was that of a nationwide network of facilities whose activities *were substantially directed and coordinated by SBCL* to ensure that it acted in concert in a common business, using a common name and sharing a common purpose b) The organization had a distinct management structure. *SBCL maintained authority over*

*key functions of the organization.* SBCL regional vice presidents, who reported to the company's headquarters in Pennsylvania, *directed and supervised various segments of the enterprise.* SBCL provided sales representatives to the Laboratory Network to promote the services of the enterprise. SBCL retained the right to determine the composition of test groups and *performed much of the third-party payor billing for enterprise members.*

*See* Second Amended Cplt., at ¶ 89 (emphasis added).

■ The allegations in the complaints establish, at most, that the members of the "laboratory network,"—*i.e.* approximately 23 to 26 SBCL-owned laboratories, approximately 50 to 60 independent laboratories; and "numerous patient service centers" (or "intake facilities")—engaged in the business of medical testing over an extended period. Significantly, an enterprise is not necessarily "ongoing" or "continuous" "simply because the acts alleged spanned a period of years." *See Cullen v. Paine Webber Group, Inc.,* 689 F.Supp. 269, 275 (S.D.N.Y.1988) (dismissing RICO claim because plaintiffs failed to allege facts sufficient to establish that the alleged enterprise functioned as a continuing unit).

Further, while the complaints allege that SBCL *controlled* the affairs of the network, this allegation is the *only* allegation of any hierarchy or organizational structure of the laboratory network. However, SBCL is not alleged by the plaintiffs to have been a member of the laboratory network, and therefore, whether SBCL controlled or manipulated particular particular entities cannot establish the existence of a hierarchy *among the members* of the alleged laboratory network, or any continuing, organizational structure *among the members.* Without such factual allegations, the complaints are insufficient to establish that the members of the laboratory network functioned as a "continuing unit" as that term has been defined in this circuit, *see supra* pp. 94–95, and therefore have failed to allege facts that could establish that the laboratory network is a viable RICO enterprise.

19. Because of this conclusion, the court declines to address SBCL's further argument that the laboratory network is not a viable RICO enterprise because the enterprise is not sufficiently distinct from SBCL (the RICO defendant).

20. The plaintiffs allege that each "association enterprise"/"billing association enterprise" consisted of one entity that perpetrated the fraud, *i.e.* SBCL, and one entity (an independent laboratory, a physician's office, or a hospital) that was manipulated into ordering and billing the plaintiffs for unnecessary tests.

Accordingly, SBCL's motion to dismiss the plaintiffs' RICO cause of action is granted to the extent the plaintiffs premise their RICO causes of action upon the "laboratory network" enterprise theory.[19]

## 2. *"Association" Enterprise / "Billing Association" Enterprise*

SBCL next argues that the plaintiffs' alternative enterprise theory,[20] (called the "association enterprise" by the plaintiff insurers, and the "billing association" enterprise by the class plaintiffs), fails as a matter of law. Specifically, SBCL argues that each association "enterprise," consisting of: 1) SBCL and each individual physician office: or 2) SBCL and each individual hospital; or 3) SBCL and each independently-owned laboratory– are not viable RICO enterprises because the members of the alleged enterprise lacked a "common purpose to engage in a particular fraudulent course of conduct."

The plaintiffs respond that RICO does not require them to establish that the members of the "association enterprise(s)" have a common fraudulent purpose, and that the complaints allege facts sufficient to establish a common purpose among the members of each association / billing association enterprise. Specifically, the plaintiffs argue that the members shared a common purpose with SBCL of *inter alia,* "joining together to obtain the benefits of associating with a large, well-known name in the medical testing field."[21] *See* 2d Amended Cplt., ¶ 118b.

21. Specifically, the plaintiffs allege that "[f]orming an association-in-fact with [SBCL] afforded each [physician's office, independent laboratory, or hospital] a perceived assurance of quality testing, certain economies of scale, and permitted a simplification of internal management functions and systems since SBCL helped manage the sales and test ordering process, billing functions and testing." *See* 2d Amended Cplt., ¶ 118b; *see also* RICO Case Statement at 82.

■ The court concludes that the plaintiffs have failed to allege facts sufficient to establish that the two members of each association/ billing association enterprise - *i.e.* either a physician's office, a hospital, or independent laboratory *and* SBCL—shared a common purpose. Rather, the second amended complaint and the consolidated amended class action complaint allege facts sufficient to establish only that *each entity* with whom SBCL allegedly joined in an "association" / "billing association" enterprise, *shared the common interest or purpose* of "joining together [with SBCL] to obtain the benefits of associating with a large, well-known name in the medical testing field." *Id.*

The second amended complaint alleges the following with respect to the association enterprise:

> Each entity that combined with SBCL in a separate association-in-fact enterprise shared the common purpose with SBCL of joining together to obtain the benefits of associating with a large, well-known name in the medical testing field. Forming an association-in-fact with defendant *afforded such entity* a perceived assurance of quality testing, certain economies of scale, and permitted simplification of internal management functions and systems since SBCL helped manage the sales and test ordering process, billing functions and testing.

*See* 2d Amended Cplt., at ¶ 118b.

The consolidated amended class action complaint alleges the following with respect to the common purpose of the "billing association" enterprises:

> Each Billing Association entity that combined with SBCL in a separate association-in-fact enterprise shared a common purpose with SBCL of joining together to obtain the benefits of associating with a large, well-known name in the medical testing field.

*See* Amended Class Action Cplt., at ¶ 69d.

Assuming that each physician office, hospital, and independent laboratory joined with SBCL "to obtain the benefits of associating with a large, well-known name in the medical testing field," these factual allegations establish only that each physician office, hospital, and independently laboratory shared a common interests or a common purpose, *not* that SBCL shared that same purpose. The requirement that the members of an association-in-fact share a common purpose, *see United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), means just that: that *each member* must share a common purpose.

Here, however, the complaints do not allege—for obvious reasons-that SBCL's purpose in joining with each physician's office, hospital, and independent laboratory—was to "obtain the benefits" of associating with a large, well-known name in the medical testing field; as to do so would be to allege that SBCL had the purpose, along with the other named entities, of joining together *with SBCL.*

Accordingly, SBCL's motion to dismiss the plaintiffs' RICO claims premised upon the "association enterprise" / "billing association enterprise" [22] theory is granted.

### 3. *"Intra–Smithkline" Enterprise (Class Plaintiffs Only )*

SBCL further argues that the class plaintiffs' RICO claim based upon the existence of an "intra-Smithkline enterprise" [23] -consisting of SBCL and certain of its

---

**22.** Because of the court's conclusion that the alleged "association enterprise" / "billing association enterprise" lacked a common purpose as required by RICO, the court declines to address SBCL's further argument that these enterprises fail as a matter of law because the enterprise is not distinct from the RICO defendant as is required by 18 U.S.C. § 1962(c).

**23.** Specifically, the amended class action complaint alleges that: "SBCL acted in concern and in association with certain officers and/or directors of SBCL, SmithKline, and SBC," so as to constitute an "association-in-fact 'enterprise'."

"corporate officers and/or directors of its parent and affiliate companies"—is legally deficient because it violates the well-established rule that the enterprise be distinct from the person alleged to have violated RICO. *See* 18 U.S.C. § 1962(c).[24]

The class plaintiffs respond that the association-in-fact enterprise alleged in paragraph 69(c) of the amended class action complaint alleges a viable enterprise, consisting of a corporate entity and members of the entity's management, that is distinct from SBCL.[25] The court disagrees.

■ It is well established that "a corporate entity may not be simultaneously the 'enterprise' and the 'person' who conducts the affairs of the enterprise through a pattern of racketeering activity." *See* Ruling on the Defs. Motions to Dismiss, June 11, 1998 (citing *Bennett v. United States Trust Co.*, 770 F.2d 308, 315 (2d Cir.1985)). The Court of Appeals for the Second Circuit has held that a RICO enterprise may not consist merely of a corporation and its officers, employees or agents. *Riverwoods Chappaqua Corp. v. Marine Midland Bank*, 30 F.3d 339 (2d Cir.1994) (holding that the defendant bank and two of its loan officers, who made up the alleged enterprise, failed the distinctiveness requirement of RICO). Further in *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir.1996), *aff'd on relevant grounds*, 523 U.S. 1019, 118 S.Ct. 1298, 140 L.Ed.2d 465 (1998), the Court of Appeals for the Second Circuit held that an alleged enterprise consisting of three separate, but affiliated entities within a single corporation, violated § 1962(c)'s requirement that an enterprise be distinct from the RICO defendant.

■ In this case, both the second amended complaint and the consolidated amended class action complaint allege that SBCL was the "person" who conducted the affairs of various enterprises in a pattern of racketeering activity. The class plaintiffs have alleged an enterprise, *see* Amended Class Action Cplt., ¶ 69(c), consisting of SBCL's officers and directors, and two of SBCL's affiliated entities (Smithkline and SBC); an enterprise that patently violates the law of this circuit. *See e g. Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir.1996), *rev'd on other grounds*, 523 U.S. 1019, 118 S.Ct. 1298, 140 L.Ed.2d 465 (1998); *Riverwoods Chappaqua Corp. v. Marine Midland Bank N A.*, 30 F.3d 339, 341 (2d Cir.1994).

Accordingly SBCL's motion to dismiss the class plaintiffs' RICO cause of action, is granted to the extent it is premised upon this enterprise.

### B. Single Entity Enterprise Theories

#### I. "Legal Entity" Enterprise / "Medical Legal Entity" Enterprise Theory

SBCL challenges the plaintiffs' "legal entity" enterprise theory (called the "medical legal entity" enterprise by the class plaintiffs), and contends that the facts as alleged by the plaintiffs are insufficient to establish that SBCL "conducted or participated" in the affairs of each "legal entity" within the meaning of § 1962(c). Specifically, SBCL argues that the plaintiffs cannot establish that SBCL "operated or managed" the hundreds of legal entities/medical entity enterprises—*i.e.* the hundreds of independent hospitals, physician offices and laboratories.

---

24. Title 18; section 1962(c) of the United States Code, makes it unlawful "for any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

25. As support, the class plaintiffs cite to cases outside this circuit, *Jaguar Cars, Inc. v. Royal*

*Oaks Motor Car Co.*, 46 F.3d 258 (3d Cir. 1995) and to *Majchrowski v. Norwest Mortgage, Inc.*, 6 F.Supp.2d 946, 957–8 (N.D.Ill. 1998). Those cases do not alter the fundamental rule in the second circuit that a corporation and its officers or agents cannot constitute a RICO enterprise. *See e.g. Discon*, 93 F.3d 1055; *Riverwoods Chappaqua*, 30 F.3d at 341

The plaintiffs respond that SBCL has misinterpreted the requirement that a defendant have "operated or managed" the affairs of a RICO enterprise. Specifically, the plaintiffs contend that the Supreme Court's holding in *Reves v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993) does not require that a RICO defendant exercise "all-pervasive control over *all* the actions" of an enterprise. According to the plaintiffs. they have alleged facts "sufficient to meet the *Reves* test" by alleging that "through its practice of providing assistance to [these entities] and management of the billing and collection for medical testing ... SBCL assumed control over important functions in [each physician's office, independent laboratory, and hospital],[26] such as 'the accounting for, invoicing of, and payment for expenses lawfully incurred.' "[27] The court disagrees.

■■■ Section 1962(c) of RICO requires that the plaintiffs establish that SBCL "conducted or participated" in the affairs of the plaintiffs' alleged enterprise. *See* 18 U.S.C. § 1962(c). In *Reves v. Ernst & Young,* 507 U.S. 170, 185, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), the United States Supreme Court held that in order to "conduct or participate" in the affairs of an enterprise, "one must participate in the operation or management of the enterprise itself."[28] To satisfy the operation or management test, a plaintiff must allege facts sufficient to establish that a RICO defendant "ha[d] some part in directing the enterprise's affairs." *Reves,* 507 U.S. 170, 179, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). "An enterprise [may] be 'operated or managed' by others 'associated' with the enterprise who exert control over it, as, for example, by bribery." *Reves v. Ernst & Young,* 507 U.S. 170, 186, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993).

■■■ It is not enough for a plaintiff to establish that a RICO defendant was "involved" with the alleged enterprise. *See Schmidt v. Fleet Bank,* 16 F.Supp.2d 340, 346 (S.D.N.Y.1998)[29] ("There is a 'substantial difference between actual control over an enterprise and association with an enterprise in ways that do not involve control; only the former is sufficient under *Reves* because the test is not involvement but control.'") (citations omitted). "[M]ere participation in the *activities* of the enterprise is insufficient; the defendant must participate in the operation or management of the enterprise." *Goren v. New Vision International, Inc.,* 156 F.3d 721 (7th Cir.1998) (emphasis added) (holding that plaintiffs failed the *Reves* test by alleging only the existence of a business relationship between the defendants and the enterprise); *accord Schmidt v. Fleet Bank,* 16 F.Supp.2d 340, 346 (S.D.N.Y. 1998) (stating that involvement in an enterprise is insufficient under *Reves v.*

**26.** For example, the plaintiffs insurers allege that "SBCL assumed control over [each of] the [physician] office's ordering and billing functions for laboratory tests." *See* Second Amended Complaint, ¶ 122. Similarly, the class plaintiffs allege that SBCL participated in the activities of each of the enterprises through SBCL's "practice of providing assistance to physician's offices and management of the billing and collection for medical testing." *See* Amended Class Action Complaint, ¶¶ 69–70.

**27.** According to the class plaintiffs, "[t]hrough such control, SBCL was able to remove a check or balance from the system. That made SBCL the *only entity* with information sufficient to reveal that the pricing, testing, and other aspects of the relationship were not as represented to the physicians, but instead concealed a significant fraudulent scheme for over billing patients and third party payers." *See* Brief in Opp. to Motion to Dismiss, at p. 16.

**28.** This is commonly referred to as the "operation or management" test of § 1962(c).

**29.** Notably, the court in *Schmidt* stated that: "[c]ourts within this circuit have repeatedly dismissed RICO claims which failed to meet the[] stringent standards" set forth in the "operation or management" test articulated in *Reves,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). *See Schmidt v. Fleet Bank,* 16 F.Supp.2d 340, 346 (S.D.N.Y.1998) (citations omitted).

*Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993)).

■ In this case, the facts as alleged by the plaintiffs establish that SBCL conducted medical testing and subsequently submitted bills for those tests to physicians' offices, hospitals and independent laboratories. Even if SBCL exercised a dominant role in the billing practices of each of these entities, a dominant role does not suffice under the *Reves* "operation or management" test. *Accord Morin v. Trupin,* 835 F.Supp. 126, 135–36 (S.D.N.Y. 1993) (holding that "substantial persuasive power to induce the alleged enterprise to take certain actions" does not satisfy the operation or management test).

Further, although SBCL's alleged fraudulent billing practices may have *victimized* the physicians' offices, hospitals, and laboratories, that does not suffice to establish that SBCL *"operated* or *managed"* the affairs of each of these alleged enterprises. The court concludes that the plaintiffs' facts are insufficient to establish that SBCL "operated or managed" each physician office, hospital, and independent laboratory.[30]

Accordingly, SBCL's motion to dismiss the plaintiffs' RICO claims to the extent they are premised upon the "legal entity" / "medical legal entity" enterprise theory is granted.

### 2. "Entity RICO" Enterprises (Class Plaintiffs Only)

SBCL further argues that the court must dismiss the RICO cause of action asserted by the "Entity Rico" plaintiffs, *i.e.* the four employee benefit plans and MBS. Specifically, SBCL argues that this cause of action is legally deficient because, like the "legal entity" / "medical legal entity" enterprise, *see supra* section B.1, the facts alleged in the consolidated amended class action complaint are insufficient to establish that SBCL "conducted or participated in the affairs of the employee benefit plans, [or of MBS, the corporate plan sponsor]...."

The class plaintiffs respond that they have alleged facts sufficient to establish that SBCL, through it flaudulent billing practices, conducted or participated in the operation or management of the "entity RICO plaintiffs." Specifically, the class plaintiffs allege that SBCL "conducted or participated in the affairs of each RICO plaintiff by causing such enterprise to repeatedly over a period of years, pay false and fraudulent claims."

The court concludes that the class plaintiffs have alleged facts that fall far short of establishing that SBCL exercised *any* "control" over the employee benefit plans or over MBS. Rather, the facts as alleged in the complaint establish, at most, that SBCL submitted fraudulent bills, which the "entity RICO plaintiffs" subsequently paid. As with the legal entity / medical legal entity enterprise theory, *see supra,* the class plaintiffs' allegations establish only that SBCL, through its billing practices *victimized* the employee benefit plans and MBS -and are insufficient to establish that SBCL *directed* the affairs of the four employee benefit plans or of MBS.

Accordingly, SBCL's motion to dismiss count I of the consolidated amended class action complaint to the extent it is premised upon "entity RICO" enterprise theory, is granted.[31]

---

**30.** As support for their allegations, the plaintiffs rely upon *Aetna Casualty Surety Co. v. P & B Autobody,* 43 F.3d 1546, 1559 (1st Cir. 1994), where the Court of Appeals for the First Circuit held that the defendant participated in the operation of the plaintiff, "by causing the plaintiff to make payments on false claims." Notwithstanding the holdings in those cases, in this case, the court concludes that the plaintiffs' allegations that SBCL submitted fraudulent bills to various legal entities are insufficient to establish that SBCL directed the legal entities' affairs. *See Reves v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993).

**31.** Because the court has concluded that all of the class plaintiffs' enterprise theories fail as a matter of law, the court need not address the issue of whether the class plaintiffs' RICO

### 3. "Each–Insurer–as–Enterprise" Theory (Plaintiff Insurers Only)

SBCL next argues that the court should dismiss count III of the second amended complaint -which alleges that each of the plaintiff insurance companies constitute an "enterprise"—because "if the 'plaintiff-as-RICO-enterprise' theory [were] to succeed, the critical enterprise concept would be read out of RICO." SBCL further argues that this enterprise theory is legally deficient because the plaintiffs cannot establish that SBCL participated in the "operation or management" of the plaintiff insurance companies.

In response, the plaintiff insurers contend that they are each an "enterprise" within the plain meaning of 18 U.S.C. § 1961(4). See 18 U.S.C. § 1961(4) (defining an "enterprise" as including any partnership, corporation, or other legal entity, etc.). Further, the plaintiff insurers contend that their allegations that SBCL subverted the key internal management processes,[32] suffice to establish that SBCL participated in the "operation or management" of each of the plaintiff insurers.[33] The court agrees only with the former assertion.

 First, SBCL's assertion that each plaintiff insurer is not an "enterprise" under RICO is contrary to the plain language of the statute. Section 1961(4) explicitly states that an "enterprise" includes "any

individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." As corporations or other legal entities, each of the plaintiff insurers constitute an enterprise according to the plain language of 18 U.S.C. § 1961(4). However, the court concludes that the plaintiff insurers have failed to allege facts that could establish that SBCL participated in the "operation or management" of the plaintiff insurers as that phrase has been defined by the Supreme Court. See Reves v. Ernst & Young, 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). In Reves, the Supreme Court clearly stated that an outsider may "operate of manage" an enterprise, only if that outsider "exert[s] control over the enterprise," so as to direct the enterprise's affairs. See id. at 179, 184, 113 S.Ct. 1163.

In this case, the court concludes that the facts as alleged in the second amended complaint fail cannot establish that SBCL exercised any "control" over the insurers. Rather, the most the facts in the second amended complaint could establish is that SBCL defrauded the plaintiff insurers.

Accordingly, SBCL's motion to dismiss the plaintiff insurers' RICO cause of action to the extent that their cause of action is based upon their theory that each insurer was an "enterprise," is granted.

---

claim alleges fraud with the requisite particularity pursuant to Federal Rule of Civil Procedure 9(b).

32. Count III of the second amended complaint alleges each individual insurer was an " 'enterprise' engaged in the business of issuing health care service contracts and/or other health care related contracts, and that SBCL conducted and participated, both directly and indirectly, in the conduct of each plaintiff enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).' " See 2d Amended Cplt., ¶ 167 (emphasis added).

Specifically, the second amended complaint alleges that: "[t]he internal procedures of each plaintiff company applicable to the han-

dling, processing, and payment of claims were key management functions for each company," and that "through repeated fraudulent acts, misrepresentations to physicians ... and the submission of fraudulent and often altered claim documents, [SBCL] subverted [the] plaintiffs' internal management safeguards...." See id. at ¶¶ 163, 167 (emphasis added).

33. The plaintiffs rely upon Aetna Casualty Surety Co. v. P&B Autobody, 43 F.3d 1546, 1559 (1st Cir.1994), where the Court of Appeals for the First Circuit upheld a jury's finding that the defendants had "conducted or participated" in the enterprise, by appraising, investigating, processing, and paying automobile insurance claims which it submitted to the enterprise.

## II. *ERISA*

SBCL next argues that the court should dismiss count IV of the second amended complaint,[34] which alleges that SBCL's billing practices violated § 1132(a)(3)[35] of ERISA. Specifically, SBCL argues that the court should dismiss the plaintiff insurers' ERISA cause of action (count IV), as it did in its previous ruling,[36] because the plaintiff insurers have failed to allege facts to establish that they are fiduciaries with standing to bring an ERISA claim against SBCL. SBCL contends that the second amended complaint only provides "specific allegations from [ ] six of the 37 insurers" concerning their fiduciary status, and that those allegations are insufficient to establish that those six insurers are fiduciaries within the meaning of ERISA so as to have standing to bring this lawsuit.[37] Sim-ilarly, SBCL argues that the plaintiff insurers' allegations are insufficient to establish[38] that they are fiduciaries within the meaning of ERISA, because they fail to allege that *any of the insurers* exercised *final* discretionary authority over the administration of an ERISA plan. Finally, in its reply brief SBCL contends that the plaintiff insurers allegation that they have "derivative standing" to sue under ERISA by "delegation" and/or "by past customs and practices" is without legal or factual support.

In response, the plaintiff insurers argue that all of the insurers are "fiduciaries" within the meaning of ERISA, 29 U.S.C. § 1002(21)(A),[39] "by reason of the delegation and/ or exercise of discretionary authority, control and/or responsibility over the review and payment of benefits" under the benefit plans.[40] *See* 2d Amended Cplt.,

---

**34.** In contrast, SBCL does not seek to dismiss count II of the amended class action complaint, asserted by the "ERISA plaintiffs." That count alleges that SBCL violated 29 U.S.C. § 1132(a)(3) by "submitt[ing] or caus[ing] to be submitted to patients, their insurers and/or third party pavers claims that included intentionally fraudulent statements, intentional misrepresentations, negligent misrepresentations, mistakes and/or material omissions." *See* Amended Class Action Cplt., ¶ ¶ 74–79.

**35.** ERISA's civil enforcement provision, 29 U.S.C. § 1132, provides, in relevant part, that:
> A civil action may be brought … by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan; (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.
29 U.S.C. § 1132(a)(3).

**36.** In its June 11, 1998 dismissal opinion, the court dismissed the plaintiff insurers ERISA cause of action, concluding that the plaintiff insurers' amended complaint "was devoid of any allegation that any one of the plaintiff[ ] [insurers] exercised any discretionary authority or control with respect to the management or administration of any plan, or rendered any investment advice with respect to any plan." *See* Ruling on the Defendant's Motion to Dismiss, at pp. 17 (citing 29 U.S.C. § 1002(21)(A)). However, the court granted the plaintiff insurers leave to re-plead their ERISA cause of action.

**37.** The second amended complaint provides specific facts regarding the fiduciary status of only six of the thirty-seven insurers. *See infra* section II.A.2.

**38.** SBCL correctly points out that ERISA mandates that a "written instrument" govern each ERISA plan, *see* 29 U.S.C. § 1102(a)(1), and that such instrument "*shall* provide for one or more *named fiduciaries* who jointly or severally shall have authority to control and manage the operation and administration of the plan." *Id.* (emphasis added). Further, ERISA provides that:
> "the term 'named fiduciary' who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan…."
29 U.S.C. § 1102(a)(2).

**39.** ERISA provides that "a person is a fiduciary of an employee benefit plan to the extent that he exercises discretionary authority or discretionary control respecting management of an employee benefit plan or has any discretionary authority or discretionary responsibility in the administration of an employee benefit plan." *See* 29 U.S.C. § 1002(21)(A).

**40.** Specifically, the plaintiff insurers allege that the insurers had "discretionary authority

¶ 204. The plaintiff insurers argue that their allegations concerning the fiduciary status of the insurers suffice at this stage of the litigation, to establish the fiduciary status of all thirty-seven insurers. Specifically, the plaintiff insurers argue that "the notice pleading concepts" of Federal Rule of Civil Procedure 8 enables them to demonstrate the fiduciary status of all thirty-seven insurers "by example," *i.e.* by setting forth specific facts as to the fiduciary status of six insurers as an example of the fiduciary status of *all* 37 insurers. The court disagrees.

Initially, the court rejects the plaintiff insurers' contention that Federal Rule of Civil Procedure 8 relieves them of their burden of establishing the fiduciary status of *all* 37 insurers and their implication that Rule 8 permits them to set forth merely conclusory allegations of the remaining 31 insurers' fiduciary status. A plaintiff bears the burden of establishing that it meets the statutory definition of a "fiduciary." *See e.g. Saint Francis Hosp. & Med. Ctr. v. Blue Cross & Blue Shield of Conn., Inc.*, 776 F.Supp. 659, 661 (D.Conn. 1991). Therefore, if each of the 17 insurers brought an individual suit against

SBCL in which it asserted an ERISA claim based on its fiduciary status, each insurer would have to provide specific facts to establish its fiduciary status.

### 1. Allegations regarding thirty-one of the insurers

The second amended complaint alleges that the plaintiff insurers are fiduciaries "by virtue of plan language and/or past customs and practices" which has "assigned and/or delegated to the plaintiffs to act on behalf of the plan administrator, and/or other fiduciaries of the Benefit Plans, to pursue the recovery of overpayments of benefits under the Benefit Plans." *See* 2d Amended Cplt., at ¶ 207. The second amended complaint fails to offer specific facts to support the plaintiff insurers' allegations of fiduciary status concerning 31 of the 37 insurers.[41]

"[M]ere labels do not, without more, confer fiduciary status." *DeLaurentis v. Job Shop Technical Services, Inc.*, 912 F.Supp. 57, 61 (E.D.N.Y.1996)(citing *Blatt v. Marshall & Lassman*, 812 F.2d 810, 812 (2d Cir.1987). Accordingly, the plaintiff insurers may not merely allege

and control and/or responsibility" over: 1) claim interpretations and plan interpretation; 2) subrogation and/or reimbursement claims; and 3) the pursuit of overpayments. Alternatively, the plaintiff insurers allege that they are "fiduciaries" under ERISA on the basis of; 4) the "delegation" of the right to pursue the claims at issue on behalf of the plan administrator and/or other fiduciaries of the benefit plans, and 5) "past customs and practices."

41. The thirty-one insurers who have failed to offer specific facts concerning their alleged fiduciary status are California Physicians' Services (d/b/a Blue Shield of California), Blue Cross & Blue Shield of Georgia, Inc., Golden Rule Insurance Company, John Deere Health Care, Inc., Pioneer Financial Services, Trustmark, Principal Life Insurance Company, Humana, Inc., Associated Hospital Service of Maine (d/b/a Blue Cross Blue Shield of Maine), Blue Cross/Blue Shield of Michigan, Allianz Life Insurance Company of North America, Blue Cross Blue Shield of Minnesota, Federated Mutual Insurance Company and

Federated Service Insurance Company, Reliastar Life Insurance Company, Mutual of Omaha Insurance Company, Blue Cross and Blue Shield of New Jersey, Inc., The Prudential Insurance Company of America, Finger Lakes Health Insurance Company, Inc. and Finger Lakes Medical Insurance Company, Inc. (d/b/a Finger Lakes Blue Cross and Blue Shield), The Guardian Life Insurance Company of America, New York Care Plus Insurance Company, Inc. (d/b/a Blue Cross and Blue Shield of Western New York and Blue Shield of Northeastern New York), New York Life Insurance Company, Blue Cross Blue Shield of North Carolina, Jefferson–Pilot Life Insurance Company, Blue Cross & Blue Shield of Rhode Island, Blue Cross and Blue Shield of Tennessee, Blue Cross and Blue Shield of Texas, Inc., Trigon Insurance Company (d/b/a Trigon Blue Cross Blue Shield), Group Hospitalization & Medical Services, Inc. (d/b/a Blue Cross Blue Shield of the National Capital Area), Blue Cross and Blue Shield United of Wisconsin and United Wisconsin Services, Inc., Time Insurance Company, and Wisconsin Physicians Service Insurance Corporation.

that they are fiduciaries—whether by plan language, by delegation, or by "past customs and practices" [42]—without providing specific facts to support their allegations.

The court therefore concludes, as it did in its June 11, 1998 ruling,[43] that the plaintiff insurers who have failed to present specific facts supporting their allegations of fiduciary status,[44] lack standing to sue SBCL under 29 U.S.C. § 1132(a)(3).[45]

**42.** SBCL correctly points out that in order to become a fiduciary "by delegation," the plaintiff insurers must have been *named in the plan instrument* or identified pursuant to a procedure set forth in the plan, *See* 29 C.F.R. § 2560.503–1(g) (1991) (stating, in relevant part, that: "the 'appropriate named fiduciary for purposes of this section may be ... any [] person *designated* by the plan, provided that [the person] is either *named in the plan* instrument or is *identified pursuant to a procedure set forth in the plan* as the person who reviews and makes decisions on claim denials' ") (emphasis added).

Unsupported allegations that there has been delegation of fiduciary status, without alleging that a delegate has been named in the plan or identified pursuant to a procedure set forth in the plan are clearly inadequate under the Department of Labor Guidelines. *See id.*

Finally, with respect to the plaintiff insurers' assertion that they have standing to sue under ERISA by reason of "past customs and practices," the court concludes that this contention is wholly without factual or legal support.

**43.** *See* Ruling on the Defendant's Motion to Dismiss, June 11, 1998 at 17 ("[T]he amended complaint is devoid of any allegation that any one of the plaintiffs exercised any discretionary authority or control with respect to the management or administration of any plan or rendered any investment advice with respect to any plan"). By giving the insurers leave to re-plead "consistent with the language of the decision," the court provided the plaintiff insurers' with the opportunity to cure the deficiencies in their amended complaint. Because they have failed to cure those deficiencies for 31 of the insurers, dismissal with prejudice is appropriate for those insurers.

**44.** The 31 insurers who have failed to offer specific allegations concerning their fiduciary status are: California Physicians' Services (d/b/a Blue Shield of California), Blue Cross & Blue Shield of Georgia, Inc., Golden Rule Insurance Company, John Deere Health Care, Inc., Pioneer Financial Services, Trustmark,

### 2. Allegations regarding the remaining six plaintiff insurers

With respect to the six insurers who have provided specific facts concerning their alleged fiduciary status, the court concludes that those insurers have alleged facts sufficient to establish-at this stage of the litigation—that they are "fiduciaries" within the meaning of ERISA.[46]

Principal Life Insurance Company, Humana, Inc., Associated Hospital Service of Maine (d/b/a Blue Cross Blue Shield of Maine), Blue Cross/Blue Shield of Michigan, Allianz Life Insurance Company of North America, Blue Cross Blue Shield of Minnesota, Federated Mutual Insurance Company and Federated Service Insurance Company, Reliastar Life Insurance Company, Mutual of Omaha Insurance Company, Blue Cross and Blue Shield of New Jersey, Inc., The Prudential Insurance Company of America, Finger Lakes Health Insurance Company, Inc. and Finger Lakes Medical Insurance Company, Inc. (d/b/a Finger Lakes Blue Cross and Blue Shield), The Guardian Life Insurance Company of America, New York Care Plus Insurance Company, Inc. (d/b/a Blue Cross and Blue Shield of Western New York and Blue Shield of Northeastern New York). New York Life Insurance Company, Blue Cross Blue Shield of North Carolina, Jefferson–Pilot Life Insurance Company. Blue Cross & Blue Shield of Rhode Island, Blue Cross and Blue Shield of Tennessee, Blue Cross and Blue Shield of Texas, Inc., Trigon Insurance Company (d/b/a Trigon Blue Cross Blue Shield), Group Hospitalization & Medical Services, Inc. (d/b/a Blue Cross Blue Shield of the National Capital Area), Blue Cross and Blue Shield United of Wisconsin and United Wisconsin Services, Inc., Time Insurance Company, and Wisconsin Physicians Service Insurance Corporation.

**45.** Title 29, section 1132(a)(3), authorizes a plan beneficiary, participant, or *fiduciary* to bring a civil action. *See e.g., Mertens v. Hewitt Associates,* 508 U.S. 248, 253, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (emphasis added) (citing ERISA).

**46.** As stated above, ERISA defines "fiduciary" as follows:

[A] person is a fiduciary with respect to a plan to the extent that: (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control

■ "A court must ascertain whether one acts as a 'fiduciary' with respect to a particular activity in question." *Trustees v. Schlesinger Bros., Inc.*, 931 F.Supp. 204, 207 (S.D.N.Y.1996); *accord Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir.1992) (stating that a person may be a fiduciary for some purposes but not necessarily for all purposes). "Whether an entity is a fiduciary must be determined by focusing on the function performed; 'fiduciary status exists with an activity enumerated in the statute over which the entity exercises discretion and control.'" *DeLaurentis v. Job Shop Technical Services, Inc.*, 912 F.Supp. 57, 61 (E.D.N.Y.1996) (dismissing ERISA claim by plaintiff who failed to allege facts sufficient to establish its fiduciary status) (citation omitted).

In *Crocco v. Xerox Corp.*, 956 F.Supp. 129 (D.Conn.1997) *rev'd on other grounds*, 137 F.3d 105 (2d Cir.1998), the court held that a plan administrator who lacked final authority to make final determinations of claims was not a "fiduciary" within the meaning of ERISA. *Accord Protocare of Metropolitan N.Y. Inc. v. Mutual Assoc. Administrators, Inc.*, 866 F.Supp. 757, 762 (S.D.N.Y.1994) (concluding that a claims administrator was not a fiduciary by merely applying the rules determining eligibility benefits without having authority to set plan policy or procedures). The *Crocco* court relied in large part on the United States Department of Labor's guidelines which state that "a person who performs purely ministerial functions ... within the framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary." *Crocco v. Xerox Corp.*, 956 F.Supp. 129 (D.Conn. 1997) *rev'd on other grounds*, 137 F.3d 105 (2d Cir.1998) (citing 29 C.F.R. § 2509.75–8 (1991)). Those guidelines explicitly state that "persons who have no power to make any decision as to plan policy, interpreta-

tions, practices or procedures," but who *inter alia*, determine eligibility for participation or benefits and process claims, are not fiduciaries of an ERISA plan. *See* 29 C.F.R. § 2509.75–8 (1991). Similarly, in *Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18, 21 (2d Cir.1996), the Court of Appeals relied, in part, upon the Department of Labor guidelines in concluding that the defendant was not a fiduciary by merely "guaranteeing eligibility and remitting premiums."

In this case, the second amended complaint contains the following allegations concerning six of the plaintiff insurers: 1) Aetna Life Insurance Company ("Aetna"); 2) Blue Cross of California ("Wellpoint"); 3) Blue Cross and Blue Shield of Florida, Inc ("BCBSF"); 4) Employers Health Insurance Company ("Employers"); 5) the Guardian Life Insurance Company ("Guardian"); and 6) Louisiana Health Services & Indemnity Company, Inc. (d/b/a Blue Cross and Blue Shield of Louisiana) ("Louisiana");

■ Specifically, the second amended complaint alleges that "one or more plans for which [ ] Aetna provides insurance and/or services grants to Aetna discretion to pursue and/or to resolve [ ] claims," and cites to language from a plan that provides Aetna with the "exclusive discretion" to decide whether to pursue "potential recoveries on subrogated claims." *See* 2d Amended Cplt., ¶ 205.

Another plan serviced by Aetna allegedly grants to Aetna "discretion to pursue and resolve" claims for the recovery of overpayments of plan benefits, including "initiating lawsuits" to recover such overpayments. *See* 2d Amended Cplt., at ¶ 206.

Similarly, the second amended complaint alleges that "one or more Benefit Plans to

respecting management or disposition of its assets; (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority

or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

which Wellpoint provides insurance and/or services states that '[i]f it is determine that any payment has been made under this Agreement to an ineligible person, or it is determined that more . . . than a correct amount has been paid . . . [Wellpoint] shall make a reasonable effort to recover any such overpayment made'" Further, the plaintiff insurers that the plan gives Wellpoint "the authority" to pursue a lawsuit to recover such overpayments.

In addition, the second amended complaint alleges that "one or more Benefit Plans" to which BCBSF provides insurance and/or services "assigns and/or delegates to BCBSF the authority to pursue recovery of overpayments on behalf of the plan administrator and/or other plan fiduciaries." Specifically, it alleges that the plan language states, "in part," that: "[w]henever [BCBSF] becomes aware of an overpayment . . . BCBSF shall make a diligent attempt to recover such overpayment." *See* 2d Amended Cplt., at ¶ 206. Further, according to the plaintiff insurers, BCBSF "has the authority" to pursue a lawsuit to recover overpayments. *Id.*

Accepting the plaintiff insurers' allegations as true, as the court must do for purposes of the within motions, the court finds the allegations in the second amended complaint concerning Aetna. Wellpoint and BCBSF are sufficient to establish—at this stage of the litigation—that Aetna. Wellpoint and BCBSF are "fiduciaries" within the meaning of ERISA.[47]

Further, with respect to Employers, the second amended complaint alleges that one or more benefits plans serviced by Employers, grants Employers "discretionary authority to interpret the terms of the benefit plan and/or determine the payments of benefit plan, *see* 2d Amended Cplt., ¶¶ 204–206 (emphasis added). while another plan refers to Employers as '[the] administrator for claims determinations and as ERISA claims review *fiduciary* as described in 29 C.F.R. § 2560.503–1(g)(2),'"[48] and grants Employers "discretionary authority to: 1) interpret policy provisions; 2) make decisions regarding eligibility for coverage and benefits, and 3) resolve factual questions relating to coverage and benefits." *See* 2d Amended Cplt., at ¶ 204 (emphasis added). Similarly, the second amended complaint alleges that "one or more Benefit Plans" for which Guardian provides insurance, states that "[t]he Guardian is the Claims *Fiduciary* with discretionary authority to determine eligibility for benefits and to construe the terms of the plan with respect to claims." *See id.* (emphasis added).

First, Employer's authority to interpret policy provisions and make decisions regarding eligibility for coverage and benefits is not, without more, sufficient in this circuit to establish "fiduciary" status. *See e.g., Geller v. County Line Auto Sales, Inc.* 86 F.3d 18, 21 (2d Cir.1996) (stating that person performing "ministerial functions" such as "determin[ing] eligibility for participation or benefits . . . and the processing of claims" is not an ERISA "fiduciary"); *Crocco v. Xerox Corp.,* 956 F.Supp. 129 (D.Conn.1997), *rev'd on other grounds,* 137 F.3d 105 (2d Cir.1998). However, because the second amended complaint cites language from "at least

---

**47.** However, the court agrees with SBCL that as this litigation proceeds, the six insurers will have to provide the entire plan documents cited to in their complaint to establish their fiduciary status within the meaning of ERISA, as the documents in their entirety will further illuminate whether these insurers are in fact "fiduciaries" within the meaning of ERISA.

**48.** 29 C.F.R. § 2560.503–1 provides, in relevant part, that:

[t]o the extent that benefits under an employee benefit plan are provided or administered by an insurance company . . . the claims procedure pertaining to such benefits may provide for review of an decision upon denied claims by such company. . . . In that case, that company . . . shall be the 'appropriate named fiduciary' for purposes of this section.

one" benefit plan that names Employers as a "claims fiduciary," the court concludes that this language is sufficient to establish, at this stage of the litigation, that Employers is a "fiduciary" for that particular plan. *See supra* note 50.

Second, with respect to Guardian, the court concludes, based upon the cited plan language naming Guardian as a "fiduciary," the court concludes that Guardian has provided sufficient facts at this stage of the litigation to establish that it is a "fiduciary" within the meaning of ERISA.

Finally,[49] the second amended complaint alleges that "one or more Benefit plan," provides Louisiana with *"full discretionary authority"* to determine eligibility for benefits and/or to construe the terms of this Benefit Plan. *See* 2d Amended Cplt., at ¶ 206 (emphasis added). Another plan allegedly provides that Louisiana "will have the right to recovery [of overpayments] from the Member or ... the Provider." *Id.* at ¶ 206.

█ Accepting these allegations as true for the purposes of the within motions, the court concludes that Louisiana has provided sufficient facts to establish that it was a "fiduciary" within the meaning of ERISA. Although the plan lan-

49. While the second amended complaint alleges that: "[o]ther plan documents contain similar grants of discretionary authority, control and/or responsibility to the plaintiffs," it offers no specific facts in support of this allegation.

50. The thirty-one insurers whose ERISA claims the court now dismisses are: California Physicians' Services (d/b/a Blue Shield of California), Blue Cross & Blue Shield of Georgia, Inc., Golden Rule Insurance Company, John Deere Health Care, Inc., Pioneer Financial Services, Trustmark, Principal Life Insurance Company, Humana, Inc., Associated Hospital Service of Maine (d/b/a Blue Cross Blue Shield of Maine), Blue Cross/Blue Shield of Michigan, Allianz Life Insurance Company of North America, Blue Cross Blue Shield of Minnesota, Federated Mutual Insurance Company and Federated Service Insurance Company, Reliastar Life Insurance Company, Mutual of Omaha Insurance Company, Blue Cross and Blue Shield of New Jersey,

guage cited above does not indicate whether Louisiana has "final authority," the court finds the phrase *"full discretionary authority"* sufficient to establish—at this stage of the litigation --- that Louisiana is a "fiduciary" for that plan within the meaning of ERISA. The court thus finds the facts in this case inapposite to *Crocco v. Xerox Corp.*, 956 F.Supp. 129 (D.Conn. 1997), *aff'd on relevant grounds*, 137 F.3d 105 (2d Cir.1998), where the plaintiff had discretion only with respect to the initial claims determinations, and cited to no plan language that provided "full discretionary authority."

Accordingly, SBCL's motion to dismiss the plaintiff insurers' ERISA cause of action is granted with respect to thirty-one of the plaintiff insurers,[50] but is denied with respect to Aetna, Wellpoint, BCBSF, Employers, Guardian, and Louisiana.

### III. Federal Common Law Cause of Action

#### A. The Plaintiff Insurers

SBCL argues that the court should dismiss count V of the second amended complaint because the court has already ruled (in its June 11, 1998 dismissal opinion) that

Inc., The Prudential Insurance Company of America, Finger Lakes Health Insurance Company, Inc. and Finger Lakes Medical Insurance Company, Inc. (d/b/a Finger Lakes Blue Cross and Blue Shield), The Guardian Life Insurance Company of America, New York Care Plus Insurance Company, Inc. (d/b/a Blue Cross and Blue Shield of Western New York and Blue Shield of Northeastern New York), New York Life Insurance Company, Blue Cross Blue Shield of North Carolina, Jefferson–Pilot Life Insurance Company, Blue Cross & Blue Shield of Rhode Island, Blue Cross and Blue Shield of Tennessee, Blue Cross and Blue Shield of Texas, Inc., Trigon Insurance Company (d/b/a Trigon Blue Cross Blue Shield), Group Hospitalization & Medical Services, Inc. (d/b/a Blue Cross Blue Shield of the National Capital Area), Blue Cross and Blue Shield United of Wisconsin and United Wisconsin Services, Inc., Time Insurance Company, and Wisconsin Physicians Service Insurance Corporation.

it should not create a federal common law cause of action for equitable relief in favor of non-fiduciaries. SBCL contends that there is nothing new in the second amended complaint to support the plaintiff insurers' renewed attempt to have this court create such a federal common law cause of action.

The plaintiff insurers respond that the court should recognize a federal common law cause of action for equitable relief on their behalf.[51] The court disagrees.

Neither the second amended complaint nor the plaintiff insurers' brief in opposition to SBCL's motion to dismiss, provides any new factual or legal basis to support the creation of a federal common law cause of action under ERISA in favor of non-fiduciaries.[52] The plaintiff insurers have simply renewed their previous request—rejected in the court's June 11, 1998 ruling—that the court expand the scope of 29 U.S.C. § 1132(a)(3).[53]

■■■ While federal courts may develop "federal common law of rights and obligations under ERISA-regulated plans," *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), "the district courts should not easily fashion additional ERISA claims and parties

outside congressional intent, under the guise of federal common law." *Curcio v. John Hancock Mutual Life Insurance Co.*, 33 F.3d 226, 234–35 (3d Cir.1994). Significantly, the United States Supreme Court has stated that "[t]he authority of courts to develop a federal common law under ERISA ... is not the authority to revise the text of the statute."[54] *Mertens v. Hewitt Associates*, 508 U.S. 248, 259, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (citation omitted) (holding that ERISA § 1132(a)(3) did not authorize a cause of action for money damages against non-fiduciaries). In *Mertens*, the Court rejected the argument that the statute's failure to authorize such a cause of action was an "oversight," and reiterated its "unwillingness to infer causes of action in the ERISA context, since that statute's carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Id.* at 254, 113 S.Ct. 2063 (quoting *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 146–47, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)).

■■■ In this case, the second amended complaint fails to establish *any* basis for the court to alter its previous conclusion,

51. .Specifically, the plaintiff insurers ask the court, as they did in their previous complaint, to recognize a "federal common law action [under] ERISA for appropriate equitable relief to enforce the terms of various employee welfare benefit plans ... or to otherwise obtain reimbursement of health benefits wrongfully paid to SBCL by plaintiffs for, or on behalf of, various employee benefit plans." *See* 2d Amended Cplt., at ¶ 214.

52. In its June, 11, 1998 ruling on the defendant's motion to dismiss, the court concluded that it should not create a cause of action under "federal common law," that would allow non-fiduciaries to sue SBCL for violations of ERISA. While the court agreed to take up the federal common law cause of action request *de novo*, in light of the fact that the plaintiff insurers have provided *no new legal basis* for reconsidering the court's June 11, 1998 conclusion as to this issue, the court need not repeat its analysis here. *See* Ruling

on the Defendant's Motion to Dismiss, June 11, 1998, at pp. 18–23.

53. As stated *supra*, ERISA's civil enforcement provision, 29 U.S.C. § 1132, provides, in part, that a civil action may be brought "by a participant, beneficiary, or fiduciary." 29 U.S.C. § 1132(a)(3).

54. In its June 11, 1998 ruling, the court cited to *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 281 (2d Cir.1992), a case in which the Court of Appeals for the Second Circuit filled a "gap" in the ERISA statute by creating a federal common law cause of action for employee plan participants against non-fiduciaries. Notably, since *Diduck*, the United States Supreme Court has expressed doubt as to whether ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), allows for liability against non-fiduciaries at all. *See Mertens v. Hewitt Associates*, 508 U.S. 248, 253–54, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993).

*see* Ruling on the Defendant's Motion to Dismiss, June 11, 1998, that the court should not create a federal common law cause of action under ERISA on behalf of non-fiduciaries. The court concludes that the failure of Congress to create a cause of action under § 1132(a)(3) on behalf of *non-fiduciaries* was not likely an "oversight," and the court therefore declines to rewrite the statute to create such a cause of action.

Accordingly, SBCL's motion to dismiss count V of the second amended complaint, alleging a federal common law cause of action for equitable relief on behalf of the non-fiduciary insurers, is granted.

### B. The Class Plaintiffs

SBCL seeks to dismiss count III of the amended class action complaint, which asserts a federal common law cause of action for unjust enrichment or restitution against SBCL.[55] Specifically, SBCL argues that there is no basis for the court to create a federal common law cause of action on behalf of the "ERISA plaintiffs,"[56] because "unlike the [plaintiff] insurers," these plaintiffs have "standing to sue SBCL and have asserted an ERISA claim in Count II that SBCL does not seek to dismiss at this time."

■ The class plaintiffs respond that the court should create a federal common law cause of action for unjust enrichment on behalf of the "ERISA plaintiffs," to reimburse them for losses not covered by ERISA, *i.e.* "[their] co-payment, co-insurance and deductible."[57] The court disagrees.

Significantly, the United States Supreme Court has stated that "in fashioning 'appropriate' equitable relief, [courts must] keep in mind the 'special nature and purpose of employee benefit plans,' and will respect the 'policy choices reflected in the inclusion of certain remedies and the exclusion of others.'" *Varity Corp. v. Howe,* 516 U.S. 489, 515, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). "Thus we should expect where Congress elsewhere provided adequate relief for a beneficiary a injury, there will likely be no need for further equitable relief." *Id.; accord Amato v. Western Union Int'l. Inc.,* 773 F.2d 1402, 1410 (2d Cir.1985) (declining to create a federal common law cause of action

55. Specifically, the class plaintiffs allege that SBCL submitted fraudulent statements that were paid by the "ERISA plaintiffs" and the "ERISA [purported] class," thereby entitling those plaintiffs to restitution from SBCL in the amount by which SBCL was unjustly enriched. *See* Amended Class Action Cplt., ¶¶ 780–84. The ERISA plaintiffs also bring their claim pursuant to Fed.R.Civ.P. 23, "on behalf of all persons or entities in the United States who are participants, beneficiaries or fiduciaries of an ERISA plan and who paid for, or paid for a portion of [particular] tests by SBCL during the class period...." *See id.* at ¶ 59. However, the court has not yet ruled on the plaintiffs' motion to certify such a class.

56. While the class plaintiffs state in their opposition to SBCL's motion to dismiss that "[t]he ERISA plaintiffs are: [ ] Davis, Watkins, the four Union Plans, and Miller Building Systems, Inc. ("MBS"), the amended class action complaint lists *only* Arthur Davis and MBS as ERISA plaintiffs." *See* Amended Class Action Cplt., at ¶ 6.

The court will consider the "ERISA plaintiffs" as including *only* those plaintiffs specifically identified as such in the amended class action complaint, *i.e.* Davis and MBS. To do otherwise would be to treat the class plaintiffs' opposition brief as an amended pleading. Parties may only amend their pleadings in accordance with the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 15.

57. The ERISA plaintiffs contend that such a cause of action "falls squarely within the holding of *Mackey v. Lanier Collection Agency,* 486 U.S. 825, 833, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), which concluded that ERISA allowed the plaintiff to attempt to garnish a defendant's wages, once a plaintiff obtained a judgment against the defendant. The court rejects the plaintiffs' contention." Nothing in the *Mackey* ruling suggests that a plaintiff with an existing ERISA cause of action may assert a *separate* cause of action to obtain a remedy *above and beyond* that which is provided by the plain language of ERISA.

for unjust enrichment on behalf of ERISA beneficiaries who already had a remedy under ERISA), *abrogated on other grounds Mead Corp. v. Tilley*, 490 U.S. 714, 109 S.Ct. 2156, 104 L.Ed.2d 796 (1989); *accord Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 92 (6th Cir.1997); *Jordan v. Federal Express Corp.*, 116 F.3d 1005, 1018 (3d Cir.1997).

Accordingly, SBCL's motion to dismiss count III of the consolidated amended class action complaint is granted.

### III. State Law Causes of Action

#### A. Plaintiff Insurers

SBCL argues that if the court dismisses the plaintiff insurers' federal causes of action, the court should decline to exercise supplemental jurisdiction over the plaintiff insurers' state law causes of action alleging fraud, unjust enrichment and restitution.[58] Alternatively, SBCL argues that if one or more of the plaintiff insurers' federal causes of action "survive in some form," they are preempted by 29 U.S.C. § 1144(a).[59] Specifically, SBCL contends that the plaintiff insurers' state common law claims are preempted by ERISA because they "relate to" ERISA plans, as evidenced by count VIII of the second amended complaint, which alleges that SBCL submitted claims "[i]n violation of the terms of the applicable health benefit plans." *See* 2d Amended Cplt., at ¶ 231.

The plaintiff insurers respond that if the court concludes "that [the] plaintiffs are not fiduciaries" and that "they do not have derivative standing" to bring their ERISA claim, then they may bring an action for state common law fraud against SBCL "arising out of [SBCL's] illegal conduct in swindling funds from the plaintiffs." As support, the plaintiff insurers cite to *Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18 (2d Cir.1996), where the Court of Appeals for the Second Circuit held that ERISA's preemption clause, 29 U.S.C. § 1144(a), did not preempt a state common law fraud claim.

■ The court concludes that the plaintiff insurers' state common law causes of action alleging fraud (count VII) and unjust enrichment (count VIII) are preempted by ERISA. § 1144(a), to the extent that they seek relief for payments related to ERISA-qualified benefit plans.[60]

In *Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18 (2d Cir.1996), the Court of Appeals for the Second Circuit held that a common law fraud cause of action based upon the defendants' misrepresentation of facts relating to a pension plan, had only a "tangential impact" on the administration of the ERISA plan at issue, and therefore was not preempted by § 114(a) of ERISA. The court in *Geller* distinguished the facts before it from those in *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270 (2d Cir.1992), where the court held that ERISA preempted a common law fraud claim arising from misconduct in the ad-

---

**58.** Counts VII and VIII of the second amended complaint assert common law causes of action for fraud, unjust enrichment and restitution. Count VI of the second amended complaint alleges that SBCL violated the Pennsylvania Insurance Fraud Statute, 18 Pa. Cons.Stat. Ann. § 4117, by "knowingly, and with the intent to defraud the plaintiffs, present[ing] or caus[ing] to be presented to the plaintiffs, statements forming a part of, or in support of, claims containing false, incomplete or misleading information concerning facts of things material to those claims."

SBCL does not seek to dismiss count VI of the second amended complaint on the merits,

because ERISA's "savings clause," *see* 29 U.S.C. § 1144(b)(2)(A), exempts from preemption, state laws that regulate insurance.

**59.** Title 29, section 1144(a) of the United States Code, provides that: "[ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."

**60.** SBCL concedes that the plaintiff insurers' state law fraud and unjust enrichment causes of action are not preempted to the extent those causes of action are limited to plans and not governed by ERISA.

ministration of an ERISA plan.[61] *See Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18, 22–23 (2d Cir.1996). While in *Diduck* the common law fraud claim *"had as a critical factor in establishing liability, the existence of a plan,"* id. at 22–23 (citing *Diduck v. Kaszycki & Sons Contractors*, 974 F.2d 270 (2d Cir.1992)), the court concluded that the common law fraud claim in *Geller* "did not rely on the pension plan's operation or management," and that the "plan was *only the context* in which [the] garden variety fraud occurred." [62] *See Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18, 22–23 (2d Cir.1996) (emphasis added).[63]

In *Allen v. Westpoint–Pepperell, Inc.*, 11 F.Supp.2d 277 (S.D.N.Y.1997), a court addressed whether *Geller* applied to prevent ERISA preemption of the plaintiffs' state law fraud claim. While acknowledging that the "rule of *Diduck* does not require the preemption of all common law claims arising out of ERISA plans," the court in *Allen* concluded that it was "impossible to fit plaintiffs' claims within the Geller exception to ERISA preemption...." *Allen v. Westpoint–Pepperell, Inc.*, 11 F.Supp.2d 277, 282 (S.D.N.Y.1997). Because the plaintiffs' state law fraud cause of action "attempt[ed] to enforce [an ERISA] plan under terms most favorable to [the] plaintiffs," the court in *Allen* concluded that the plaintiffs' fraud claim could not "be classi-

fied as 'tangential' to the [ERISA] plan." *Id.*

In this case, the gravamen of the plaintiff insurers' allegations in counts VII and VIII, are that SBCL sought payments "[i]n violation of the terms of the applicable health benefit plans." *See* 2d Amended Cplt., at ¶ 231 In order to prevail on these causes of action, the plaintiff insurers will have to establish the existence of the ERISA plans and will have to prove that SBCL's actions impeded the operation and management of the plan so as to result in the plaintiff insurers making overpayments on behalf of those ERISA plans.

Because the existence of an ERISA plan is a "critical factor in establishing liability," *see Diduck v. Kaszycki & Sons. Contractors, Inc.*, 974 F.2d 270, 288 (2d Cir.1992) (emphasis added), and because the plaintiff insurers' fraud and unjust enrichment causes of action involve the operation and management of the ERISA plans, *cf. Geller*, 86 F.3d at 22, the court concludes that those causes of action are preempted by ERISA, to the extent they arise out of alleged overpayments made by the plaintiff insurers to ERISA plans.[64]

Accordingly, SCBL's motion to dismiss counts VII and VIII of the second amended complaint to the extent those counts seek relief for payments made to SBCL on behalf of ERISA-qualifying benefit plans, is granted.

---

**61.** In *Diduck*, a company failed to make required pension fund contributions for a group of "off-the-books" workers. *See Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270 (2d Cir.1992).

**62.** In *Geller*, the plaintiffs, benefit plan trustees, alleged that the defendants, an employer and the employer's officers, fraudulently misrepresented the status of an employee, and in reliance on the defendants' misrepresentation, the plaintiffs paid out more than $104,00 on the employee's behalf.

**63.** Further, the court in *Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18 (2d Cir.1996) explicitly stated that "because restitution is accounted for under ERISA," state common law causes of action for restitution may be

preempted by ERISA. *Id.* at 21 (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256–59, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)). However, the court did not evaluate whether the plaintiffs' restitution claim was in fact preempted, in light of the court's previous conclusion that the complaint failed to establish that the defendants were unjustly enriched.

**64.** It is not clear from the second amended complaint whether the plaintiff insurers' state law causes of action for fraud and unjust enrichment seek relief from payments the insurers made to SBCL on behalf of benefit plans not governed by ERISA; to the extent they do, those claims are not preempted by ERISA.

## B. Class Plaintiffs

In its memorandum in support of its motion to dismiss, SBCL argues that the court must dismiss the state law causes of action [65] asserted by the four employee benefit plans [66] (who are part of the group identified in the amended class action complaint as the "state law plaintiffs"). Specifically, SBCL argues that the "state law" plaintiffs' cause of action under the Pennsylvania UTP (count IV), for conversion (count V) and for unjust enrichment (count VI), are preempted by ERISA.

In response, the class plaintiffs assert that amended complaint does not assert state law causes of action by the four employee benefit plans, thereby rendering SBCL's arguments concerning the employee benefit plans' state law causes of action moot.

■ However, because the consolidated amended class action complaint explicitly defines the "state law plaintiffs" as including the four employee benefit plans, SBCL's challenges to the state law claims asserted by those plans are not moot. Rather, the court concludes that the plans' state law cause of action for violations of the Pennsylvania UTP, for conversion and for unjust enrichment (counts IV–VI) are preempted by § 1144(a) of ERISA.[67]

■ It is well established that ERISA's preemption clause "is among the broadest that can be found in the law" *See Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18, 22 (2d Cir.1996). Section 1144(a) of ERISA preempts state law cause of action to the extent they "relate to" ERISA-qualifying plans. *See* 29 U.S.C. § 1144(a) (ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan"). A state law cause of action "relates to" an ERISA plan, and is therefore preempted, if "it has a connection with or reference to such a plan." *see Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), so long as that connection is not "tenuous, remote, or peripheral." *New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645, 661, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995).

Here, the essence of the causes of action asserted in counts IV through VI of the consolidated amended class action com-

**65.** In counts IV–VI of the consolidated amended class action complaint, the "state law plaintiffs" assert causes of action under the Pennsylvania unfair trade practices ("UTP") statute and under the Pennsylvania common law of conversion and unjust enrichment.

**66.** SBCL does not seek to dismiss the state law causes of action asserted by the *individuals* included in the "state law plaintiffs" group, as those individuals' allegations against SBCL are not related to an ERISA plan.

In their memorandum in opposition to SBCL's motion to dismiss, the class plaintiffs state that *"there are no state law claims* [asserted by] the four Union fund plaintiffs," and that "the only state law claims are being asserted by Plaintiffs Cotter, Donnenberg, Gallardo, and White." *See* Mem. in Opp. to Dismiss the Amended Class Action Cplt., at p. 30 (emphasis added). The amended complaint belies this assertion. In paragraph 7 of the amended class action complaint, the

"state law plaintiffs" are defined as the four employee benefit plans—Carpenter's Health Fund of West Virginia, Employer–Teamsters Joint Counsel # 84 Health and Welfare Fund, Northern California General Teamsters Security Fund, and S.E.I.U. Local 74 Welfare Fund- and five individual plaintiffs: 1) Janet Cotter; 2) Barbara Donenberg: 3) Mary Gallardo; 4) David Watkins; and 5) Judith White. *See* Amended Class Action Cmplt., ¶¶ 4–7 (Plaintiff Arthur Davis, who was insured by an ERISA-qualified plan, does not join in this cause of action).

The court will treat as "state law plaintiffs" those plaintiffs who are specifically identified as such in the amended class action complaint. *See* Amended Class action Cplt. at ¶¶ 4–7.

**67.** As stated above, SBCL does not seek to dismiss the state law claims asserted by the following "state law plaintiffs:" 1) Janet Cotter; 2) Barbara Donenberg; 3) Mary Gallardo; 4) David Watkins; and 5) Judith White; therefore those claims remain.

plaint by the four employee benefit plans are that SBCL's actions detrimentally affected the four ERISA-qualified employee benefit plans. The existence of the ERISA plans is a "critical factor in establishing liability," *see Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 288 (2d Cir.1992), and the causes of action asserted by the employee benefit plans are *inextricably linked* to the operation and management of those ERISA plans.

The court concludes that these causes of action have a "connection with" or "reference to" those ERISA plans that is not "tenuous, remote, or peripheral." The court therefore concludes that the exception to preemption articulated in *Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18 (2d Cir.1996) does not apply to the causes of action articulated by the four employee benefit plans.

 Accordingly, SBCL's motion to dismiss counts IV, V and VI of the amended class action complaint to the extent those causes of action are asserted by the four employee benefit plans, is granted.[68]

**68.** Further, even if ERISA § 1144(a) did not preempt the employee benefit plans' claim under the Pennsylvania UTP (count IV), that claim would still fail as a matter of law, because the plain language of the Pennsylvania UTP prohibits corporate entities from bringing such claims. Specifically, the Pennsylvania UTP limits private actions to a "person" who purchases or leases "goods or services primarily for personal, family, or household purposes," and who suffers damages as a result of a prohibited trade practice. *See* 73 Pa. Stat. § 201–9.2. Courts have interpreted this language to limit suits to "situations in which consumers have purchased goods for their personal use rather than for business purposes." *Britamco Underwriters, Inc. v. C.J.H., Inc.*, 845 F.Supp. 1090, 1096 (E.D.Pa.), *aff'd,* 37 F.3d 1485 (3d Cir.1994). When "insurance is purchased for business purposes, there will be no standing to assert a private cause of action under the UTP statute" *Id.* at 1096. In this case, the employee benefit plans "purchased" laboratory tests for the plan participants and beneficiaries, and not for the "personal use" of the benefit plans. Therefore, to the extent

## CONCLUSION

For the foregoing reasons, SBCL's motion to dismiss (document no. 165) the second amended complaint is GRANTED IN PART AND DENIED IN PART.

Specifically, the motion is granted with respect to the plaintiff insurers' RICO causes of action (counts I, II and III). The motion is granted in part and denied in part with respect to the plaintiff insurers' ERISA cause of action (count IV). The motion is granted with respect to the plaintiff insurers' federal common law cause of action for equitable relief (count V). The motion is granted with respect to the plaintiff insurers' state law fraud cause of action (count VII) and state law unjust enrichment cause of action (count VIII), to the extent those causes of action relate to ERISA-qualifying benefit plans. *See supra* section III, A.[69]

Further, for the foregoing reasons, SBCL's motion to dismiss (document no. 163) counts I and III of the consolidated class action complaint as well as counts IV, V, and VI to the extent counts IV, V, and VI are asserted by the four employee benefit plans, is GRANTED.[70]

that count IV of the consolidated amended class action complaint asserts a cause of action by the four employee benefit plans, that cause of action fails as a matter of law.

**69.** Counts VII and VII of the second amended complaint (for fraud and unjust enrichment) remain only to the extent those counts seek relief from SBCL for payments the plaintiff insurers made on behalf of non-ERISA qualifying benefit plans.

Further, as discussed above, SBCL does not seek to dismiss count VI of the second amended complaint, which alleges a violation of the Pennsylvania Insurance Fraud Statute, and therefore, that cause of action remains. *See* 2d Amended Cplt. at ¶¶ 220–224.

**70.** Although SBCL does not address count VII of the consolidated amended class action complaint, which asserts a cause of action for injunctive relief under 18 U.S.C. § 1964(b) (RICO), 29 U.S.C. § 1134(a)(2) (ERISA) and Pennsylvania state law, that cause of action is dismissed to the extent it relies upon RICO and ERISA. *See supra* sections I, II. Howev-

er, that cause of action remains to the extent it is based upon Pennsylvania state law, and to the extent it is asserted by the following individual plaintiffs with no alleged connection to an ERISA plan: 1) Janet Cotter, 2) Barbara Donenberg; 3) Mary Gallardo; 4) David Watkins, and 5) Judith White.

In addition, the following causes of action asserted in the consolidated amended class action complaint remain: 1) the ERISA cause of action asserted by Arthur Davis and by MBS (count II); and 2) the state law causes of action alleged by Cotter, Donenberg, Gal-lardo, Watkins and White, for violations of the Pennsylvania UTP (count IV), for conversion under Pennsylvania law (count V) and for unjust enrichment under Pennsylvania law (count VI).

Further, in the event that the court grants the plaintiffs' motion for class certification, there may be additional individuals with viable state law causes of action under counts IV through VI, to the extent that such individuals' causes of action do not relate to an ERISA-qualifying benefit plan.

## 7/7/99 - PRIVILEGED

## REMAINING CLAIMS AGAINST SBCL

### BLUE CROSS CASE

| Plaintiff | ERISA | Non-ERISA State Law Claims | | |
|---|---|---|---|---|
| | | Fraud | Unjust Enrichment | PA Insurance Fraud Statute |
| Aetna | X | X | X | X |
| BC/CAL | X | X | X | X |
| BCBS/FL | X | X | X | X |
| Employers | X | X | X | X |
| Guardian | X | X | X | X |
| BCBS/LA | X | X | X | X |
| GROUP OF 31* | | X | X | X? |

### CLASS ACTION CASE

| Plaintiff | ERISA | Non-ERISA State Law Claims | | |
|---|---|---|---|---|
| | | PA UTP | Conversion | Unjust Enrichment |
| Cotter | | X | X | X |
| Donenberg | | X | X | X |
| Gallardo | | X | X | X |
| Watkins | | X | X | X |
| White | | X | X | X |
| Davis | X | | | |
| MBS | X | | | |
| Carpenter's Fund | | | | |
| Northern Cal. Fund | | | | |
| SEIU Local #74 | | | | |
| Employer -- Teamsters #84 | | | | |

* California Physicians' Services (d/b/a Blue Shield of California), Blue Cross & Blue Shield of Georgia, Inc., Golden Rule Insurance Company, John Deere Health Care, Inc., Pioneer Financial Services, Trustmark, Principal Life Insurance Company, Humana, Inc., Associated Hospital Service of Maine (d/b/a Blue Cross Blue Shield of Maine), Blue Cross/Blue Shield of Michigan, Allianz Life Insurance Company of North America, Blue Cross Blue Shield of Minnesota, Federated Mutual Insurance Company and Federated Service Insurance Company, Reliastar Life Insurance Company, Mutual of Omaha Insurance Company, Blue Cross and Blue Shield of New Jersey, Inc., The Prudential Insurance Company of America, Finger Lakes Health Insurance Company, Inc. and Finger Lakes Medical Insurance Company, Inc. (d/b/a Finger Lakes Blue Cross and Blue Shield), The Guardian Life Insurance Company of America, New York Care Plus Insurance Company, Inc. (d/b/a Blue Cross and Blue Shield of Western New York and Blue Shield of Northeastern New York), New York Life Insurance Company, Blue Cross Blue Shield of North Carolina, Jefferson-Pilot Life Insurance Company, Blue Cross and Blue Shield of Texas, Inc., Trigon Insurance Company (d/b/a Trigon Blue Cross Blue Shield), Group Hospitalization & Medical Services, Inc. (d/b/a Blue Cross Blue Shield of the National Capital Area), Blue Cross and Blue Shield United of Wisconsin and United Wisconsin Services, Inc., Time Insurance Company, and Wisconsin Physicians Service Insurance Corporation.